## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PAUL PARKS, Next Friend for
JP, a minor, and
PAUL PARKS and SHERRY KALIN, individually,

      Plaintiffs,                Case No. 2022cv12084

vs.                          U.S. District Judge Robert H Cleland
                                 U.S. Magistrate Judge Kimberly G Altman

OXFORD COMMUNITY SCHOOL
DISTRICT, BRAD BIGELOW,
TEACHER/SUPERVISOR #1,
TEACHER/SUPERVISOR #2,
NM, THOMAS MISZEWSKI and
ASHELY MISZEWSKI., in their
individual capacities, and KENNETH
WEAVER, in his official capacity.

      Defendants.

_____/

## FIRST AMENDED COMPLAINT
## FOR EQUITABLE AND INJUNCTIVE RELIEF AND DAMAGES

NOW COME Plaintiffs, PAUL PARKS, as Next Friend of JP, a minor, PAUL PARKS and

SHERRY KALIN, individually, by and through their attorneys, THE LEX FIRM, P.C., and state

the following for their First Amended Complaint, per Rule 15 of the Federal Rules of Civil

Procedure, against the Defendants:

## JURISDICTION AND VENUE

1.      This cause of action arises under the U.S. Constitution and the laws of the United

States, including the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. §§ 1983, and

under the constitution, statutes and common law of the State of Michigan.

2.     This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §1983.

3.     This Court should exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same facts as the federal claims and all claims are part of the same case or controversy.

4.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. §1391(b)(1)-(2) because all facts alleged in this Complaint occurred in Oakland County, Michigan and all parties reside within the Eastern District of Michigan.

## THE PARTIES

### PLAINTIFFS

5.     At all times relevant to this lawsuit, JP, a minor, lived with parents Paul Parks and/or Sherry Kalin, in the County of Oakland, State of Michigan.

6.     That the Plaintiff, Paul Parks is the father and will be the duly appointed next of friend of, JP, a minor.

### THE OXFORD DEFENDANTS

7.     Defendant Oxford Community School District ("OCSD") is a municipal corporation organized and carrying out its functions in the Township of Oxford, County of Oakland, State of Michigan. OCSD's functions include all operations at Clear Lake Elementary School, including but not limited to funding, staffing, training, supervising the staff, counselors, and teachers at Clear Lake Elementary School, and maintaining the safety and security of school facilitates for the education and general welfare of OCSD students.

8.     OCSD is being sued pursuant to 42 U.S.C. § 1983 for its official policies, practices, and customs, which were the motivating force and cause-in-fact for the decision to return and/or

permit Defendant NM to engage in school and school activities, like recess, with other students unsupervised and without restrictions, as it did on March 14, 2022.

9.      Defendant Brad Bigelow ("Bigelow") is a citizen of the State of Michigan and at all relevant times was acting under the color of state law within the course and scope of his employment as Principal of Clear Lake Elementary School within Defendant OCSD.  Bigelow is being sued pursuant to 42 U.S.C. § 1983, and for his gross negligence under state law.

10.      Defendant Teacher/Supervisor #1 is a citizen of the State of Michigan and at all relevant times was acting under the color of state law within the course and scope of his/her employment as a teacher/supervisor at Clear Lake Elementary School within Defendant OCSD. Teacher #1 is being sued pursuant to 42 U.S.C. § 1983, and for his gross negligence under state law.

11.      Defendant Teacher/Supervisor #2 is a citizen of the State of Michigan and at all relevant times was acting under the color of state law within the course and scope of his/her employment as a teacher/supervisor at Clear Lake Elementary School within Defendant OCSD. Teacher #2 is being sued pursuant to 42 U.S.C. § 1983, and for his gross negligence under state law.

12.      Upon information and belief, at all relevant times hereto, Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other currently unidentified school officials were employees or actual and/or apparent agents of OCSD, working in their course and scope of employment and/or agency at OCSD.

13.      At all relevant times hereto, Defendants Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other currently unidentified school officials, whose names are unknown to the Plaintiffs as of the filing of this complaint, had direct contact with the attacker,

NM when NM violated multiple school policies procedures and rules by attacking JP, other students and/or teachers and/or were acting as recess supervisors at OCSD, within the course and scope of their employment with OCSD.  OCSD is vicariously liable for the negligence and gross negligence of the aforementioned Defendants.

14.     OCSD, Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other currently unidentified school officials are referred to collectively as "the Oxford Defendants".

15.     Defendant Ken Weaver ("Weaver") is a citizen of the State of Michigan and is currently the Superintendent of OCSD.  Weaver has been named in this Complaint in his official capacity only and is not included within "the Oxford Defendants" who are being sued for damages. Weaver is being sued pursuant to 42 U.S.C. § 1983 for prospective equitable and injunctive relief because he is the highest-ranking official of OCSD and is responsible for ensuring the District's compliance with state and federal laws, including the Fourteenth Amendment's Due Process Clause.

**THE MISZEWSKI DEFENDANTS**

16.     At all times relevant to this lawsuit, Defendant NM, a minor, was the perpetrator of the assault committed on March 14, 2022, at Clear Lake Elementary School, and lived with his parents in Village of Oxford, County of Oakland, State of Michigan.

17.     At all times relevant to his lawsuit, Defendant Thomas Miszewski ("TM") was the father of NM, who lived with his parents in the Village of Oxford, County of Oakland, State of Michigan.

18.     At all times relevant to his lawsuit, Defendant Ashley Miszewski ("AM") was the mother of NM, who lived with his parents in the Village of Oxford, County of Oakland, State of Michigan.

19.     NM, TM and AM are sometimes referred to collectively as "the Miszewski Defendants."

## **COMMON ALLEGATIONS**

20.     Upon information and belief, over the course of his school years with OCSD, NM exhibited concerning, strange, bizarre and violent behavior, including but not limited to assaulting students and/or a teacher on at least four previous occasions before the underlying incident that is subject to this lawsuit.

21.     Upon information and belief, in the months leading up to the attack that is subject to this lawsuit, NM was known to Clear Lake Elementary School and OCSD teachers, counselors, and/or administrators for his concerning behavior that indicated emotional distress and the possibility of child neglect.

22.     In the weeks and/or months leading up to the underlying assault, NM threw William Parks ("WP"), JP's identical twin brother down to the ground and broke open his elbow.

23.     In the weeks and/or months leading up to the underlying assault, NM threw another student at Clear Lake Elementary School, Marek (last name currently unknown) down to the ground and also threw him up against a wall; after JP's attack, Marek came home crying off the bus in fear of NM and was really upset.  After NM's attack on Marek, his mother went so far as to call Clear Lake Elementary School  and made it known she wants NM no-where near Marek.

24.     Upon information and belief, not only has NM attacked other students, he threw a book at a teacher (name not currently known).

25.     On March 26, 2021, Dr. Nathan R. Clinton-Barnett, father to Avery Barnett ("AB"), e-mailed Defendant Bigelow regarding an incident where AB was pushed/tackled on the

playground by NM at recess; AB expressed to is parents that NM has attacked other students and that OCSD administrators, teachers and/or supervisors were aware of the attacks.

26.     In response to these incidents reported from parents, students and/or teachers, District administrators persisted in their campaign to conceal and minimize the threat to students' safety.

27.     After each one of the named incidents, as described herein, Bigelow and other school officials permitted NM to return to class and/or school activities, such as recess, without supervision or restriction.

28.     The above conduct should have alerted NM's parents, as well as other people who had extensive contact with him, that he was suffering from significant emotional and/or behavioral problems, and that he might have been subject to child neglect by his parents.

29.     Upon information and belief, despite these concerning and reoccurring attacks, neither TM or AM did anything to get an assessment of NM's condition.

30.     Clearly, this behavior was known or would have been known to his parents.

31.     Upon information and belief, despite all of these concerning and reoccurring attacks, and others, which should have alerted TM and AM to the fact that their son was engaged in some concerning, violent behavior, and needed an immediate evaluation and treatment, the Miszewski parents failed to obtain help for NM.  Their failure/refusal to get help for NM was significant that it rose to the level of child neglect.

32.     Despite all of these concerning and reoccurring attacks, NM was permitted to return to school without restrictions, participate in all activities and interact with all other students without proper supervision or parameters in place.

33.     All of these concerning and reoccurring attacks, were clearly so violent and disturbing, were an obvious cry for help, and openly expressed NM's thoughts and actions of violence against others.

34.     Upon information and belief, Defendant Bigelow spoke extensively with NM, who denied that there were any problems.  Clearly, Defendant Bigelow did not believe NM and called the Miszewski parents and asked them to come to school for meeting(s) regarding NM.

35.     Bigelow and other OCSD employees and/or agents made the deliberate decision to return NM to the classroom and other school activities, including recess, despite knowing NM's violent behavior.

36.     Bigelow and other OCSD employees and/or agents knew or should have known that telegraphing to NM that there would be no meaningful disciplinary or other response to signals of violent intent would increase the risk of harm to all members of the student body, including JP, by emboldening NM to believe that he could successfully complete his attacks without meaningful intervention.

37.     Upon information and belief, Bigelow and other OCSD employees and/or agents engaged in other conduct which emboldened, motivated and/or otherwise influenced NM in a manner which made it more likely that additional attacks would occur.

38.     Bigelow and other OCSD employees and/or agents had the authority as school administrators to maintain NM in a safe, secure and restricted environment, where, he could have been supervised by adults and not cause harm to other students.

39.     Instead, Bigelow and other OCSD employees and/or agents exercised their authority to return NM to class and other school activities, despite knowing that he posed a substantial threat to others.

40.     Bigelow and other OCSD employees and/or agents misused their authority by sending NM back to school activities without proper supervision and/or restriction.

41.     Bigelow and other OCSD employees and/or agents had the official authority to act as "gatekeepers" in deciding whether to return NM to the classroom and other school activities.

42.     Bigelow and other OCSD employees and/or agents used their authority to return NM to the classroom and other school activities, causing a departure from the status quo, and thus creating and/or exacerbating a risk of violence that had not existed or was lower when NM was safely secured, supervised and/or restricted.

43.     These affirmative acts by Bigelow and other OCSD employees and/or agents, which departed from the status quo of safety, rendered the occupants of Clear Lake Elementary School, including JP, more vulnerable to danger than had Bigelow and other OCSD employees and/or agents not returned NM to the classroom and school activities.

44.     Upon information and belief, Bigelow and other OCSD employees and/or agents engaged in other conduct which emboldened, motivated and/or otherwise influenced NM in a manner which made it more likely that another attack would occur.

45.     The affirmative action of Bigelow and other OCSD employees and/or agents to release NM back to school placed the students and staff of Clear Lake Elementary School  directly in harm's way.

46.     By releasing NM and returning him to the classroom and the general school population, Bigelow and other OCSD employees and/or agents affirmatively set into motion the sequence of events that lead to the attack on JP, with deliberate indifference to the substantial and obvious threat of school violence, and with recklessness demonstrating deliberate indifference and

a substantial lack of concern for whether an injury resulted, either to JP or to the students and staff of Clear Lake Elementary School.

47.     It is shocking to the conscience that Bigelow and other OCSD employees and/or agents would take these actions despite their knowledge that NM attacked other students and a teacher in the past.

48.     By reason of the knowledge that the Oxford Defendants possessed before the attack on March 14, 2022, it was foreseeable by said Defendants that NM would carry out acts of violence on JP and possibly others at Clear Lake Elementary School.

49.     The Defendants' affirmative actions were reckless, grossly negligent, shocked the conscience and put JP, and others, at substantial risk of serious and immediate harm.

50.     The severe and grievous injuries to JP were caused by the wrongful affirmative acts and fault of the Defendants being sued for damages.

51.     The Defendants knew that their actions would endanger the lives of Clear Lake Elementary School students and others at Clear Lake Elementary School on March 14, 2022.

52.     The OCSD and its administrators have been engaged in a concerted effort to deflect their responsibility for the continuous and systematic attacks by NM at Clear Lake Elementary School.

53.     Defendant OCSD and its administrators adopted, implemented and followed an unconstitutional policy that resulted in the release of NM from the safety and security of being restricted and supervised, and returned him to class and other school activities, despite knowing the he was in the throes of a mental health crisis and was determined to be a threat to others.

54.     Specifically, the OCSD has sought to avoid accountability by claiming it has a formal policy and practice of returning students to class unless there is a "disciplinary" issue that

can be used to either send them home, and since NM did not present a "disciplinary" issue, it had no choice but to return him to class and other school activities.

55.     This policy of using false justifications demonstrates egregious deliberate indifference to the danger presented when a student such as NM, is returned to the school environment.

56.     The unconstitutional policy relied upon by the Oxford Defendants directly resulted in the harm to JP and is the basis for direct liability against OCSD.

57.     In fact, in order to protect the bodily integrity of the student body as a whole, and JP in particular, the OCSD policy should have required the detention, removal, restriction and/or supervision from the student body of any student who was deemed to be in a mental health crisis or in any way posed a threat to the students and staff of Clear Lake Elementary School.

58.     The policy should have required that in the event OCSD officials determined or believed that a student might pose a threat to others, an investigation should have been conducted.

59.     Discovery may reveal additional aspects of the policy that needed to be reformed or that needed to be added to the policy.

60.     The failure to keep NM supervised, segregated and/or away from other students was an essential factor in allowing NM to carry out his assault against JP.

61.     In fact, upon information and belief, the Oxford Defendants knew that NM needed intervention and evaluation.

62.     The Oxford Defendants knew that the refusal of the parents to address NM's concerning and reoccurring behavior was:  1)  evidence of child neglect of the kind that needed to be reported immediately under the Child Protection Act; and 2)  evidence that NM was going to continue to be a grave risk of harm to others.

63.     At all relevant times hereto, the Oxford Defendants stood in loco parentis to JP and owed him the obligation to protect him from foreseeable and known attacks from others.

64.     The acts of the Oxford Defendants, as alleged in the foregoing allegations of this complaint, greatly increased the danger posed by NM and rendered the environment for JP and other students less safe after their acts than before.

65.     That on March 14, 2022, the Plaintiff, JP, was a student at and on the Clear Lake Elementary School premises.

66.     NM, also a student at Clear Lake Elementary School, and one who is known to have violent tendencies, including prior bullying and physical attacks on other students and a teacher, grabbed JP by his hoodie, threw him to the ground, causing JP to fracture his arm.

67.     This attack happened during recess and on school grounds.

68.     By reason of the knowledge that the Oxford Defendants possessed before the underling assault on JP, it was foreseeable by said Defendants that NM would carry out further acts of violence on JP and others.

69.     That Defendants' affirmative actions and inactions were reckless and put JP at substantial risk of serious and immediate harm.

70.     That Defendants knew or clearly had to know that their actions would endanger JP at Clear Lake Elementary School.

## CAUSES OF ACTION AGAINST DEFENDANTS

### COUNT I
### State-Created Danger – *Monell* Liability under 42 U.S.C. § 1983
### *(Defendant Oxford Community School District)*

71.     Plaintiffs incorporate by reference all of the previous and subsequent paragraphs.

72.     Defendant OCSD and its administrators and policy makers, including Principal Bigelow, adopted and maintained official policies, practices, and customs that were the moving force behind, and cause-in-fact of, the school attack and the severe and grievous injuries to JP on March 14, 2022.  These official policies, practices, and customs included and are not limited to:

a.     An official policy, practice, and custom of preventing staff and administrators from maintaining administrative supervision over students and restricting students from returning to the classroom or other school activities, like recess, unless there is a "disciplinary issue" to justify doing so;

b.     A policy, practice, or custom of concealment, misrepresentation, minimizing or avoidance and non-escalation to higher authorities, including law enforcement, of suspected or known risks of school violence;

c.     The OCSD did not train Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 to supervise, secure or hold a student, or to otherwise restrict a student from returning to the classroom or other school activities, like recess, where the student presents a threat of harm to others, and where returning the student to the classroom/recess environment would create or increase the danger of violence;

d.     A policy, practice, and custom of not training staff or administrators in the proper manner of interviewing and questioning a student who is known to be violent;

e.     A policy, practice, and custom of not training staff or administrators in the proper methods for completing a risk assessment;

f.     Disregarding and diverting student mental health crises if they do not fit within the OCSD's definition of a "disciplinary issue";

g.     Declining to file mandatory reports of suspected child abuse or neglect in violation of MCL § 722.623(a);

h.     Discouraging teachers, counselors, and administrators from reporting suspected child abuse or neglect, despite their status as mandatory reporters;

i.     Requiring additional and unnecessary procedures in order to approve a teacher, counselor, or administrator's request to file a report of suspected child abuse or neglect, or to contact law enforcement regarding a threat of violence at school; and

j.      Any other policy, practice, or custom that may become known through the course of this litigation.

73.     These policies, practices and customs caused employees to inflict constitutional harms by directly starting the sequence of events that led to the attack and injury to JP on March 14, 2022.

74.     As a direct and proximate result of the OCSD policies, practices and customs which caused OCSD employees to inflict constitutional harms by directly allowing NM's violence to occur, JP suffered terror, shock, excruciating pain, suffering, fear, trauma, severe emotional distress and will incur future damages and the need for medical care.

**COUNT II**
**State-Created Danger – Deliberate Indifference – 42 U.S.C. § 1983**
*(The Oxford Defendants)*

75.     Plaintiffs incorporate by reference all of the previous and subsequent paragraphs.

76.     Minor Plaintiff JP is a citizen of the United States and is entitled to the rights, privileges, and immunities accorded to all citizens of the State of Michigan and the United States, including the clearly established right to be free from danger created and/or increased by individual Defendants Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents.

77.     Any reasonable person would be aware of this clearly established constitutional right.

78.     Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents, with knowledge of this clearly established right, and acting in deliberate indifference, violated JP's right to be free from violence without due process, as secured by the Fourteenth Amendment's Due Process Clause, by taking affirmative acts under color of law to disrupt the status quo and create a danger of severe injury that did not exist in the status quo prior

to those affirmative state actions, and by taking affirmative acts which caused severe injuries to JP, which would not have happened but-for-those affirmative state actions.

79.     At all relevant times, Defendants Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents were acting under the color of state law as employees of OCSD, a public school district, including and not limited to securing, supervising, advising, and directing the activities of NM; taking actions and making decisions regarding school practices and procedures, both formal and informal; and in their conduct as school administrators and teachers.

80.     Defendants Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents knew that there were threats and acts of violence that compromised student safety at the Clear Lake Elementary School in the weeks and months leading up to the March 14, 2022 attack on JP, and that those threats and acts had not been formally and/or fully investigated and handled properly.

81.     Defendants Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents had the authority and obligation as school administrators, supervisors and agents to maintain school safety and to fully and completely investigate all violence in their District and all threats, implied or actual, to the safety of the District's students.

82.     The affirmative actions and conduct of Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents in the weeks leading up to the March 14, 2022 attack, which created and/or increased the risk of harm to JP in reckless disregard for his safety, non-exhaustively include:

    a.     Promoting a policy, practice, or custom of misrepresentation, minimizing or avoidance and non-escalation of suspected or known risks of school violence; and

       b.      Any and all additional breaches that created or increased the danger of violence at the school that may become known through the course of this litigation.

83.     The foregoing non-exhaustively described actions and conduct of the individual government Defendants was a proximate cause of the minor Plaintiff's injuries.

84.     At all relevant times, Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents' respective actions, by failing to act, essentially implying to each and every student, including JP, that there was no credible threat of further violence, demonstrated conduct so reckless as to demonstrate a substantial lack of concern for whether an injury resulted.

85.     At all relevant times, JP was safer before Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents respectively took action and advised each and every student, including JP, that there was no credible threat of future violence.  By virtue of Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents' actions and/or inactions, they substantially increased the harm to JP.

86.     Had Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents performed reasonably, NM would have been removed from school or segregated from the general population, and the assault on JP on March 14, 2022, would never have occurred and JP would not have sustained the severe and grievous injuries he did that day.

87.     Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents' affirmative acts created a state-created danger that substantially increased the special danger of harm to JP and other students at Clear Lake Elementary School, as distinguished from a risk that affects the public at large.

88.     The conduct of Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents was objectively unreasonable and performed knowingly,

deliberately, and with deliberate indifference to the safety of JP, causing all Clear Lake Elementary School students and staff to be less safe than they were before their affirmative actions.

89. But for the affirmative acts and inactions of Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents, JP would not have attacked and injured on March 14, 2022.

90. Upon information and belief, Defendants Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents knew that NM was in extreme emotional distress; that he presented a substantial risk of danger to others at the school; that he was urgently requesting help from school staff; that there was sufficient cause to believe his parents neglected him; and that he expressed and acted on specific violent intentions.

91. Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents had the authority and obligation as school administrators, teachers, supervisors, officials to maintain the status quo, in which NM was safe, supervised, secure and restricted on March 14, 2022, and where he was supervised by adults and could not harm others.

92. Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents had the authority to maintain, supervise and/or restrict NM in a safe and secure location under the watchful eye of a responsible adult until such time as he was no longer a threat to his fellow students.

93. Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents affirmatively misused their authority by releasing NM and returning him to class and/or school activities, like recess, the day of March 14, 2022, despite knowing that NM posed a substantial threat to himself and others in the elementary school.

94.     Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents each took affirmative actions that individually, or in concert with one another, created and substantially increased the danger that NM's conduct would escalate to actual violence, thus causing severe and grievous injuries to JP.

95.     Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents took affirmative acts on March 14, 2022 that created or increased the risk of danger, including but not limited to:

      a.    Releasing NM to the general school population, despite knowing that NM was a threat to others;

      b.    Promoting a policy, practice, or custom of concealment, misrepresentation, minimizing or avoidance and non-escalation of suspected or known risks of school violence; and

      c.    Any and all additional affirmative acts that created or increased the danger of violence at the school that may become known throughout the course of this litigation.

96.     Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents' affirmative acts created and exacerbated a state-created danger that substantially increased the special danger of harm to JP and his classmates at the school, and in doing so knowingly and recklessly disregarded the substantial risk of danger that NM posed to others.

97.     The relationship between Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents, as school administrators and/or agents, and the students of Clear Lake Elementary School, including JP, was such that Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents knew that JP was a foreseeable victim of NM's acts of violence following his release back to the general school population without supervision or restrictions.

98.     Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents are not entitled to qualified immunity because Plaintiff's right not to be severely attacked and injured by a fellow student who was released from a safe environment into one in which harm was likely to occur was clearly established at the time of Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents' actions.

99.      The conduct of Defendants Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents was objectively unreasonable and performed knowingly, deliberately and with deliberate indifference to the safety of JP and his fellow students, causing Clear Lake Elementary School students and staff to be less safe than they were before Defendants' affirmative actions.

100.    Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents knew that their conduct, which exacerbated the risk and ultimately caused a vicious attack, violated the clearly established rights of the students at Clear Lake Elementary School.

101.    Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents had ample time to deliberate and make an unhurried judgment about whether to release NM from the safety to the general school population.

102.    Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents consciously disregarded a substantial risk of serious harm by releasing NM from the safety to the general school population.

103.    But for the affirmative acts of Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents to change the status quo by permitting NM to participate in school activities without supervision or restrictions, NM would not have bullied, attacked or injured anyone at Clear Lake Elementary School, including JP, on March 14, 2022.

104.     But for Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents' actions of releasing NM into the general school population, the status quo-safety – would have remained.

105.     Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents' actions affirmatively created new dangers that did not exist as long as NM remained supervised, restricted and separated from the general student population.

106.     It is shocking to the conscience that Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents would release NM and return him to the classroom or other school activities, like recess, where they knew that NM had attacked students in the past, including JP's brother, and attacked a teacher in the past; they knew that NM's parents were informed of these incidents, they knew that NM was a threat to others, and they knew that they had an obligation to keep NM away from the classroom/recess environment even if the circumstances did not present a "disciplinary issue."

107.     In comparison with the public-at-large, as students at Clear Lake Elementary School, JP and other potential students were specifically at risk and exposed to the dangers presented by the act of releasing NM into the general school population, where he committed the attack on JP.

108.     As a direct and proximate result of Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents' deliberate indifference, JP suffered terror, shock, excruciating pain, suffering, fear, trauma, severe emotional distress, and will incur future damages and the need for medical care.

**COUNT III**
**Violation of Article 1, §17 of the Michigan Constitution-Substantive Due**
**Process – Bodily Integrity**
***(The Oxford Defendants)***

109. Plaintiffs incorporate by reference all of the previous and subsequent paragraphs.

110. The Due Process Clause of the Michigan Constitution provides, in pertinent part, that "[n]o person shall…be deprived of life, liberty or property, without due process of law . . . " Const 1963, art 1, § 17.

111. The due process guarantee of the Michigan Constitution is coextensive with its federal counterpart. The doctrine of substantive due process protects enumerated fundamental rights and liberties under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and under Const 1963, art 1, § 17.

112. The substantive component of due process encompasses, among other things, an individual's right to bodily integrity free from unjustifiable government interference.

113. In a long line of cases, courts have held that, in addition to the specific freedoms protected by the Bill of Rights, the "liberty" specially protected by the Due Process Clause includes the right to bodily integrity.

114. Plaintiffs enjoy the constitutionally protected Due Process right to be free from the invasion of bodily integrity through assault and battery under the Due Process Clause.

115. The violation of the right to bodily integrity involves an egregious, nonconsensual entry into the body which was an exercise of power without any legitimate governmental objective.

116. The United States Supreme Court and the Michigan appellate courts have recognized that no right is held more sacred, or is more carefully guarded, than the right of every individual to the possession and control of his or her own person, free from all interference of others, unless by clear and unquestionable authority of law.

117. Any reasonable person would be aware of this clearly established right to bodily integrity.

118. Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents, with knowledge of this clearly established right, and acting in deliberate indifference, violated JP's right to bodily integrity and to be free from violence without due process, as secured by the Fourteenth Amendment's Due Process Clause, by taking affirmative acts under color of law to disrupt the status quo and create a danger of severe injury that did not exist in the status quo prior to those affirmative state actions, and by taking affirmative acts which caused severe injuries to JP, which would not have happened but-for those affirmative state actions.

119. At all relevant times, Defendants Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents were acting under the color of state law as employees of OCSD, a public school district, including and not limited to securing, supervising, advising, and directing the activities of NM; taking actions and making decisions regarding school practices and procedures, both formal and informal; and in their conduct as school administrators, teachers, counselors and agents.

120. Defendants Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents knew that NM presented a substantial risk of danger to others at the school; that there was sufficient cause to believe his parents neglected him; and that he attacked students and a teacher in the past.

121. Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents had the authority and obligation as school administrators and agents to maintain the status quo, in which NM was safe, supervised, secure and restricted on March 14, 2022, and where he was supervised by adults and could not harm others.

122.    Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents had the authority to maintain NM in a safe and secure location under the watchful eye of a responsible adult until such time as he was no longer a threat to his fellow students.

123.    Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents affirmatively misused their authority by releasing NM and permitting him to return to class and other school activities, like recess, despite knowing that NM posed a substantial threat to others in the elementary school.

124.    Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents each took affirmative actions that individually, or in concert with one another, created the danger that NM's conduct would escalate to actual violence, thus causing severe and grievous injuries to JP

125.    Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents took affirmative acts on March 14, 2022 that created the risk of danger to JP and other students at Clear Lake Elementary School, including but not limited to:

      a.    Releasing NM to the general school population, without supervision or restriction, despite knowing that NM attacked others in the past, or having probable cause to know, that he was a threat to the bodily integrity of others;

      b.    Any and all additional affirmative acts of deliberate indifference that would shock the conscience and create and/or increase the risk of danger of violence at the school that may become known throughout the course of this litigation.

126.    Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents' deliberate indifference to NM's violent past, to return NM to the general school population without supervision or restriction, shocks the conscience and directly and proximately resulted in the assault on JP on March 14, 2022.

127.    The relationship between Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents, as school administrators and agents, and the students of Clear Lake Elementary School, including NM, was such that Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents knew that JP was a foreseeable victim of NM's acts of violence.

128.    Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents are not entitled to qualified immunity because they clearly released NM from a safe environment into one in which harm and violation of JP's Constitutional right of bodily integrity was foreseeable and likely to occur as a result of Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents' deliberate indifference.

129.    The affirmative actions of Defendants Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents shock the conscience and were performed knowingly and with deliberate indifference to the safety of JP and his fellow students.

130.    Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents knew that their conduct violated the clearly established rights of the students at Clear Lake Elementary School, including JP.

131.    Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents had ample time to deliberate and make an unhurried judgment about whether to release NM back to the general school population without restriction or supervision.

132.    But for the affirmative acts of Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents to change the status quo by permitting NM to participate freely in school activities, including recess, NM would not have attacked and injured JP on March 14, 2022.

133.    It is shocking to the conscience that Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents would release NM back to the classroom and other school activities, without restriction or supervision, where they knew that NM attacked other students and a teacher in the past.

134.    Defendant Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents' deliberate indifference resulted in a nonconsensual touching of Plaintiff's body in violation of the Michigan Constitution 1963, art 1, § 17.

135.    As a direct and proximate result of Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2 and/or other employees and/or agents' deliberate indifference, JP's Constitutional right to bodily integrity was violated and he suffered terror, shock, excruciating pain, suffering, fear, trauma, severe emotional distress, and will incur future damages and the need for medical care.

**COUNT IV**
**Prospective Equitable and Injunctive Relief**
**14th Amendment Due Process and 42 U.S.C. § 1983**
**(*Defendant Weaver*)**

136.    Plaintiffs incorporate by reference all of the previous and subsequent paragraphs.

137.    The Fourteenth Amendment to the United States Constitution forbids state actors from depriving any person of life, liberty, or property without due process of law.

138.    Based on the provisions of Michigan law regarding public education, the students of OCSD, including JP, have a constitutionally protected right to a public education, which is protected as a property interest under the Due Process Clause of the Fourteenth Amendment.

139.    Defendants OCSD and Weaver must exercise their authority in the operations of the District consistent with constitutional safeguards.

140.    As alleged in this Complaint, the Oxford Defendants took affirmative state actions that, in accordance with official District policy, created the danger of deadly violence at Clear Lake Elementary School, and which in fact caused the assault at Clear Lake Elementary School on March 14, 2022.

141.    Since March 14, 2022, the District as well as Superintendent Weaver, have failed to remedy the unconstitutional policies and customs that caused the assault to occur, and have therefore deprived the students, including JP, of the full and equal enjoyment of their property right to a public education.

142.    Yet, to date, the OCSD has not undertaken any measures to restore the property right of Clear Lake Elementary School students, including JP, to the full enjoyment of a public education at Clear Lake Elementary School.

143.    OCSD's failure to restore the full property interest of students to a public education include, and are not limited to:

    a.    After the assault, the OCSD promised it would complete a thorough and independent investigation to review its actions and the events leading to the assault. To date, OCSD has not completed the investigation it promised to its students and community.

    b.    OCSD maintains an unconstitutional policy of prohibiting administrators from holding students out of the classroom, even where there is probable cause to know that they pose a risk of harm to themselves and others, so long as the circumstances do not present a "disciplinary" issue. So long as this policy is maintained, the OCSD will continue to place students in the classroom and general population even where they pose a threat to themselves and others, as happened when NM was released and permitted to participate in recess without supervision or restriction on March 14, 2022.

    c.    OCSD maintains a policy of failing to train administrators that they can restrict violent students from returning to the classroom.

    d.    OCSD maintains a policy of failing to train administrators in how to complete a thorough and effective risk assessment for violent and bullying students.

e.   Since the assault, OCSD has engaged in a concerted cover story of its actions leading to the assault. This includes, and is not limited to, asserting it properly returned NM to the classroom and general student population.

144.   To redress and remedy these unconstitutional practices, JP requests the following prospective equitable and injunctive relief:

a.   An order requiring OCSD and/or Superintendent Weaver to complete the independent investigation of the actions and events leading to the assault on March 14, 2022.

b.   An order requiring OCSD and/or Superintendent Weaver to immediately cease its policy, practice, or custom of concealment, misrepresentation, minimizing or avoidance and non-escalation to higher authorities, including law enforcement, of suspected or known risks of school violence.

c.   An order requiring OCSD and/or Superintendent Weaver to immediately reform its policy of prohibiting administrators from holding students out of the classroom, even where there is probable cause to know that they pose a risk of harm to themselves and others, so long as the circumstances do not present a "disciplinary issue". So long as this policy is maintained, OCSD will continue to place violent students in the classroom even where they pose a threat to themselves and others, as happened when NM was permitted to participate with the general student population on March 14, 2022.

d.   An order requiring OCSD and/or Superintendent Weaver to secure proper training for administrators to understand that they can hold and/or restrict students, and not return them to class, if there is probable cause to believe that they are a threat of harm to themselves or others.

e.   An order requiring OCSD and/or Superintendent Weaver to secure proper training for administrators in how to conduct a proper risk assessment when students are violent or bully other students.

f.   An order requiring OCSD and/or Superintendent Weaver to secure proper training for administrators and other staff of when and how to conduct a legal search of student belongings, including backpacks and lockers.

g.   An order requiring OCSD and/or Superintendent Weaver to publicly retract all statements made in the course of its cover story after the assault, including a retraction of all statements suggesting that

Bigelow, Teacher/Supervisor #1, Teacher/Supervisor #2, and others, acted properly in releasing NM and returning him to the classroom.

h.   All other prospective equitable and injunctive relief the Court deems necessary to restore Plaintiff's property right to a full public education, as protected by the Due Process Clause of the Fourteenth Amendment.

**COUNT V**
**Negligence and Gross Negligence**
*(The Oxford Defendants)*

145.   Plaintiffs incorporate by reference all of the previous and subsequent paragraphs.

146.   On March 14, 2022, the minor Plaintiff, JP, was a student at Clear Lake Elementary School during the assault being carried out by Defendant NM.

147.   JP was playing a game of soccer at recess with other students, including NM, when NM grabbed JP from behind, threw him to the ground, shattering his arm.

148.   As a direct and proximate consequence of the experience of being viciously attacked by NM, JP has suffered physical pain, discomfort, severe anxiety and emotional distress.

149.   This is manifest in his inability to sleep, recurrent nightmares, fear of attending school, and fear of participating in athletic activities.  These damages are expected to continue into the undetermined future.

150.   As to the Oxford Defendants, their conduct was negligent because:

a.   The Oxford Defendants stood in loco parentis as to JP and owed him the obligation to protect him from the unreasonable risk of injury posed by NM;

b.   They had a duty to JP to protect him from the conduct of NM that said Defendants knew or should have known was likely to occur;

c.   It was foreseeable that, if NM cause great bodily harm to others, additional students would suffer great harm;

d.   NM caused great physical and emotional harm to JP; and

e.  The negligent of the Oxford Defendants was a proximate cause of the injuries and damages to JP.

151.  To the extent that the court ultimately determines that this case requires application of principles of governmental immunity under the statutes an case law of this state and finds that the fats of this case fail to meet the definition of gross negligence and the proximate cause as determined by the Supreme Court, the requirement that a plaintiff establish a higher standard for proximate cause and establish gross negligence in a case involving governmental actors than would be required for the same plaintiff, on the same facts, in a case against non-governmental defendants, is unconstitutional in that:

a.  It denies the Plaintiffs in this case due process;

b.  It denies the Plaintiff in this case the equal protection of the law.

152.  The Oxford Defendants were grossly negligent within the meaning of Michigan law in that, for the reasons set forth in the foregoing allegations of the complaint, Defendants' acts and/or inaction constituted conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

153.  The gross negligence of the Oxford Defendants was a proximate cause of the injuries and damages to JP.

154.  As a direct and proximate result of the damages to their son, Plaintiffs Paul Parks and Sherry Kalin have suffered and will continue to suffer losses into the future, due to the injuries and damages suffered by their Plaintiff child, including, but not limited to:

a.  The reasonable expense of necessary medical care, treatment and services received by their child;

b.  The reasonable value of the society, companionship and relationship with their child of which they have been deprived; and

c.  All other damages that may be learned through the course of discovery.

155.     To the extent that the claims on behalf of Paul Parks and Sherry Kalin extend beyond what the law permits with respect to consortium claims for parents arising from injuries to children, Plaintiffs maintain that this law is no longer good law and should be overturned.

156.     Plaintiffs incorporate by reference all of the previous and subsequent paragraphs.

### COUNT VI
### Negligent Infliction of Emotional Distress
### *(The Oxford Defendants)*

157.     Plaintiffs incorporate by reference all of the previous and subsequent paragraphs.

158.     The Oxford Defendants negligently and grossly negligently inflicted emotional distress upon all individual Plaintiffs in that:

       a.     The injuries inflicted on JP, were serious and of a nature certain to cause severe mental disturbance to these Plaintiffs; and

       b.     The mental shock resulted in actual physical harm to these Plaintiffs.

159.     The negligence of these Defendants was the proximate cause of the injuries and damages to Plaintiffs.

**WHEREFORE,** the Plaintiffs, Jaxson Parks, by his next friend Paul Parks and Paul Parks and Sherry Kalin, individually, claim judgment against the Oxford Defendants in an amount to which they are found to be entitled, together with interest, costs, attorneys fees and exemplary damages.

### COUNT VII
### Assault and Negligence
### *(The Miszewski Defendants)*

160.     Plaintiffs incorporate by reference all of the previous and subsequent paragraphs.

161.     The actions of NM as set forth in the common allegations of this complaint constituted an assault upon JP.

162. By virtue of failing to get NM evaluated, by withhold all information from the school officials concerning NM's emotional disturbance and violent propensities and their refusal to pull NM from school, TM and AM were acting in concert with NM and are equally liable with NM for his violent assaults and other intentional torts committed as to the Plaintiffs.

163. As a direct and proximate result of the actions of the Defendants, JP suffered shock, humiliation, fright, excruciating pai, suffering and fear.

164. As a direct and proximate result of the acts of Defendant NM, JP suffered severe emotional distress, pain, physical suffering, sleep disturbance, nightmares, fear of attending school, inability to enjoy activities with peers, and can be expected to continue to suffer such damages into the undetermined future.

165. As a direct and proximate result of the damages to their son, Plaintiffs Paul Parks and Sherry Kalin have suffered and will continue to suffer losses into the future due to the injuries and damages suffered by their Plaintiff son, including, but not limited to:

    a.    The reasonable expense of necessary medical care, treatment and services received by their children;

    b.    The reasonable value of the society, companionship and relationship with their children of which they have been deprived; and

    c.    All other damages that may be learned though the course of discovery.

166. To the extend that the claims on behalf of Paul Parks and Sherry Kalin extend beyond that the law permits with respect to consortium claims for parents arising from injuries to children, Plaintiffs maintain that this law is no longer good law and should be overturned.

## COUNT VIII
### Negligent and Reckless Conduct
### *(The Miszewski Defendants)*

167. Plaintiffs incorporate by reference all of the previous and subsequent paragraphs.

168.    In the months prior to the incident of March 14, 2022, Defendants TM and AM had actual knowledge of emotional disturbance and behavior in NM due to;

       a.    Their knowledge of NM's bullying physical attacks on other students and/or teachers in the past; and

       b.    The fact that NM was isolated, without many friends.

169.    Notwithstanding this knowledge, neither TM nor AM did anything to obtain counseling or other emotional support for NM.

170.    The conduct of TM and AM was also negligent as to all plaintiffs herein for the following reasons:

       a.    Having knowledge of his son's mental disturbance and knowing that his son had attacked other student, refused to take their son out of school

       b.    When TM and AM met with school officials, they intentionally withheld from the school personnel their prior knowledge of NM's instability.

171.    The foregoing negligent acts and omissions of TM and AM, individually and collectively, constituted negligent supervision of their minor child and a negligent failure to cooperate withs school officials to prevent that tragedy that occurred.

172.    The foregoing acts and omissions by TM and AM were a proximate cause of the injuries and damages to all plaintiffs hereinbefore set forth.

**COUNT IX**
**Intentional Infliction of Emotional Distress**
***(The Miszewski Defendants)***

173.    Plaintiffs incorporate by reference all of the previous and subsequent paragraphs.

174.    The willful, malicious, reckless and intentional acts of NM constituted an intentional infliction of emotional distress as defined under Michigan law as to tall Plaintiff, because the behavior was outrageous and specifically intended to inflict severe emotional as well

as physical harm on the plaintiffs and all others at Clear Lake Elementary School on March 14, 2022.

175.     The willful, malicious, reckless and intentional acts of TM and AM constituted an intentional infliction of emotional distress as defined under Michigan law as to tall Plaintiff, because the behavior was outrageous and specifically intended to inflict severe emotional as well as physical harm on the plaintiffs and all others at Clear Lake Elementary School on March 14, 2022.

176.     As a direct and proximate result of the conduct of the Defendants as alleged herein, plaintiff suffered extreme emotional harm with physical manifestations.

### COUNT X
### Negligent Infliction of Emotional Distress
### *(The Miszewski Defendants)*

177.     Plaintiffs incorporate by reference all of the previous and subsequent paragraphs.

178.     The Miszewski Defendants, apart from their willful and reckless conduct, negligently inflicted emotional distress upon all individual Plaintiffs in that:

      a.     The injuries inflicted on JP, were serious and of a nature certain to cause severe mental disturbance to these Plaintiffs; and

      b.     The mental shock resulted in actual physical harm to these Plaintiffs.

179.     The negligence of these Defendants was a proximate cause of the injuries and damages to all Plaintiffs.

### <u>DAMAGES</u>

180.     As a direct and proximately results of the actions of the Defendants, Plaintiffs have suffered terror, shock, excruciating pain, suffering and fear.

181.     As a further direct and proximate cause of the actions of the Defendants, Plaintiffs have suffered severe emotional distress, post-traumatic stress disorder, sleep disturbance,

nightmares, flashbacks, fear of attending school, and can be expected to continue to suffer such damages into the future.

182.    As a further direct and proximate cause of the actions of the Defendants, Plaintiffs have suffered and will suffer losses into the future due to the injuries and damages he suffered to his mental health, face and body, including, but not limited to the reasonable expenses of necessary medical care and treatment and all other damages that may be learned through the course of discovery.

WHEREFORE, Plaintiffs claim judgment against the Defendants in the amount to which they are found to be entitled, together with interest, costs, attorneys' fees, exemplary damages, punitive damages and relevant injunctive relief.

Respectfully submitted,

**THE LEX FIRM, P.C.**

_____/s/ Andre M. Sokolowski_____
DORA G. HERMIZ SOKOLOWSKI (P59215)
ANDRE M. SOKOLOWSKI (P60737)
Attorneys for Plaintiffs
5840 Lorac Drive, Suite 10
Clarkston, MI   48346
(248) 353-7800
dora@thelexfirm.com
andre@thelexfirm.com

Date:  September 8, 2022

## <u>RELIANCE UPON JURY DEMAND</u>

Plaintiffs, PAUL PARKS, as Next Friend of JP, a minor, PAUL PARKS and SHERRY

KALIN, individually, by and through their attorneys, THE LEX FIRM, P.C, hereby rely upon

the jury demand previously filed in this matter.

Respectfully submitted,

**THE LEX FIRM, P.C.**


\_\_\_\_/s/ Andre M. Sokolowski_____
DORA G. HERMIZ SOKOLOWSKI (P59215)
ANDRE M. SOKOLOWSKI (P60737)
Attorneys for Plaintiffs
5840 Lorac Drive, Suite 10
Clarkston, MI   48346
(248) 353-7800
dora@thelexfirm.com
andre@thelexfirm.com

Date:  September 8, 2022